IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KAILEE A. KINNEY,                                    Civil No.  CV 03-1573 JE

       Plaintiff,

       v.                                              OPINION AND ORDER

EMMIS OPERATING COMPANY, and its
General Partner EMMIS TELEVISION
BROADCASTING, L.P., dba KOIN-TV,
INC.,
       Defendant.


      Mark A. Turner
      Nathan A. Karman
      Ater Wynne, LLP
      222 SW Columbia, Suite 1800
      Portland, OR 97201-6618
          Attorneys for Plaintiff

      Amy Joseph Pedersen
      Dennis E. Westlind
      Tonkon Torp, LLP
      1600 Pioneer Tower
      888 SW Fifth Avenue
      Portland, OR 97204-2099
          Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Kailee Kinney brings this employment-related action against defendant Emmis Television Broadcasting, L.P., dba KOIN-TV, and its General Partner, Emmis Operating Company, (KOIN).[1]  KOIN moves for summary judgment.


## BACKGROUND

Defendant Emmis Television Broadcasting, L.P., operates the Portland, Oregon television station KOIN-TV (KOIN).

Plaintiff was diagnosed with lupus in 1988.  In August of 2001, plaintiff began working at KOIN as a part-time news trainee.  She was promoted to full-time associate producer in March of 2002 under the supervision of Executive Producer April Thomas (Thomas).

As a result of her lupus, plaintiff suffers chronic fatigue and numerous other symptoms that occur episodically.  The symptoms include joint inflammation, water retention and headaches.  Plaintiff asserts that she cannot perform certain repetitive motions and cannot work overnight. After a 1998 disability determination by an Administrative Law Judge, plaintiff received Social Security Disability Insurance  Benefits for several years.  Plaintiff's physician, Dr. Emil Bardana (Bardana), testified that plaintiff's condition can sap plaintiff of the energy to do any specific activity in a sustained fashion for an entire workday.  In addition, Bardana testified he would counsel plaintiff against working in a job that requires sustained or extensive walking or heavy lifting.  Plaintiff has testified that she believes jobs

---

[1]Defendant notes that it is misnamed in the caption.

that would require her to be outside all day, to stand all day or require her to engage in physically demanding work would not be a "good fit" for her.

Lupus did not affect plaintiff's ability to perform her job at KOIN. When symptoms did arise, plaintiff was able to either alleviate or cope with them in ways that did not affect her work. During her employment at KOIN, none of plaintiff's doctors advised her to change any of her activities to better control her lupus.

As noted above, plaintiff was promoted to a full-time associate producer position in March, 2002. That position involved writing duties three days a week and production of KOIN's television program, *Northwest Illustrated*. Plaintiff testified she was aware of a possibility that occasionally the job would require overnight "fill-in" work, but that the full-time associate producer position was almost always performed during the day. On some occasions, plaintiff had filled in on the overnight shift. Plaintiff did not tell anyone at KOIN she had a condition that prevented her from working the overnight shift.

David Lippoff is KOIN's Vice President and General Manager. Lippoff testified that, at a corporate meeting he attended in early March 2003, Emmis's television station managers were instructed to reduce their budgets and take steps to control costs. Lippoff testified that in subsequent meetings with the entire KOIN staff, he discussed KOIN's strategic objectives for the next fiscal year, which included reducing costs.

In March 2003, a reporter position and a producer position at KOIN were vacant. Thomas testified that she met with News Director Rick Howard to determine how to fill those positions because, due to budgetary constraints, KOIN was unable to fill both. Thomas testified that after reviewing every newsroom job and evaluating the feasibility of consolidating various positions and duties, she and Howard arrived at a solution creating the

necessary savings. Thomas testified that she and Howard decided to eliminate plaintiff's position and reassign her production duties for *Northwest Illustrated* to another producer. Under the plan, plaintiff's writing duties would be assigned to a reporter/writer position they would create and hire for, and the vacant reporter position would not be filled. The new writer/reporter would perform on-air reporting two days a week and take on plaintiff's three-day-a-week writing responsibilities. Thomas testified that she and Howard decided to promote the overnight associate producer to the vacant overnight producer position and reassign plaintiff to the overnight associate producer position. These restructuring changes were approved by Lippoff.

On April 2, 2003 Thomas told plaintiff that there was "going to be some jockeying of positions" and that the fate of *Northwest Illustrated*, the show plaintiff produced, was "uncertain." Thomas told plaintiff that the "good news" was that her position was not based solely on her producing *Northwest Illustrated*. Thomas told plaintiff that KOIN wanted to give her an opportunity for more writing experience by offering her a position as an associate producer for KOIN's morning show–a position that would require her to work overnight.

In response to the news of these changes, plaintiff told Thomas she could not take an overnight shift position because she has lupus. Thomas testified that after meeting with plaintiff, she informed KOIN's Newsroom Business Manager, Teresa Stedman, that plaintiff had a medical condition which prevented her from accepting reassignment to the overnight shift. Thomas testified that she discussed the situation with Stedman and Howard in an attempt to find ways that KOIN could accommodate Kinney's condition and still meet KOIN's budget goals.

On April 3, 2003, Thomas asked plaintiff for a confirming note from her doctor, which, plaintiff testified, she provided on April 7th. Thomas testified that she and Stedman could not find a way to restructure the newsroom positions in a way that would both meet KOIN's budgetary goals and allow plaintiff to continue working. The parties agree that the duties of the overnight associate producer position could not be performed during a daytime shift. Thomas testified that the only way to create a position for plaintiff at KOIN would have been to demote a current producer to associate producer.

In a meeting with plaintiff on April 8, 2003, Thomas and Stedman told plaintiff that they could not find a way to resolve the problem posed by plaintiff's inability to work the overnight shift, and that KOIN was eliminating her position. Thomas and Stedman expressed sympathy for plaintiff and asked if she had any ideas that would allow her to continue working, but plaintiff had none at that time. Plaintiff continued working through April 30, 2003, and did not offer any solutions during this time. The parties agree that there was no accommodation that KOIN could have provided that would have enabled plaintiff to work the overnight shift.

Plaintiff contests KOIN's assertion that the restructuring or elimination of plaintiff's position was discussed or planned before plaintiff disclosed that she has lupus. Plaintiff has submitted a cover sheet entitled "KOIN-TV Budget & Operating Plan FY 2004–Revised April 15, 2003" and an undated document entitled "News Staffing Analysis Fiscal 2004 Operating Budget" which lists the names, titles and work schedules of a number of defendant's staff members. Plaintiff's name, title as associate producer, and a work schedule for the position plaintiff held are included in that document. Plaintiff asserts this document

shows that, as of April 15, 2003, her existing position was slated to continue through KOIN's March 2003-February 2004 fiscal year.

In a supplemental declaration, Lippoff asserts there is often a lag of two or more weeks between the time changes are made at the personnel level and when those changes are reflected in KOIN's financial records. As an example, defendant points out that its Budget and Operating Plan for Fiscal Year 2004, which contains a spreadsheet dated April 9, 2003, shows Producer John Peck remaining at KOIN throughout fiscal year 2004 even though Peck submitted his resignation on March 20, 2003, and stopped working at KOIN on April 4, 2003. In addition, KOIN notes that the undated document submitted by plaintiff listing her name and weekly work shift also continues to show Peck working in the AM Producer position. An April 18, 2003 budget forecast submitted by defendant reflects Peck's resignation and the elimination of the daytime Associate Producer position held by plaintiff.

Lippoff testified that by eliminating plaintiff's position and the vacant reporter position, creating a new reporter/writer position, and delegating duties, KOIN saved $39,500 per year in salary costs alone.

## CLAIMS

Plaintiff brings nine claims. The first claim alleges that KOIN violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), by failing to reasonably accommodate plaintiff's disability.

Plaintiff's second claim alleges that KOIN violated the ADA, § 12112(a), by intentionally and wrongfully terminating plaintiff's employment.

Plaintiff's third claim alleges that KOIN violated the ADA, §12112(b)(6), by using qualification standards that screened out plaintiff because of her disability.

Plaintiff's fourth claim alleges that KOIN violated the ADA, §12203, by discriminating against her because of her attempted exercise of rights protected by the ADA.

Plaintiff's fifth claim alleges that the conduct alleged in the first claim violated O.R.S. 659A.122(2)(e).

Plaintiff's sixth claim alleges that the conduct alleged in the second claim violated O.R.S. 659A.112(1).

Plaintiff's seventh claim alleges that the conduct alleged in the third claim violated O.R.S. 659A.112(2)(g).

Plaintiff's eighth claim alleges that KOIN violated O.R.S. 659A.109 by discriminating against plaintiff because of her attempted exercise of rights provided for in O.R.S. 659A.885(1) to 659A.145.

Plaintiff's ninth claim alleges that KOIN wrongfully terminated plaintiff.

**STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. <u>Id.</u> at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

I.  Establishing Unlawful Discrimination Based on Disability

The ADA[2] prohibits discrimination in employment against "qualified individuals with a disability." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must show that 1) she is a disabled person within the meaning of the ADA, 2) she is able to perform the essential functions of the job with or without reasonable accommodation, and 3) she suffered an adverse employment decision because of her disability. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996); see 42 U.S.C. §§ 12112(b)(5)(A) & 12111(8).

---

[2]Oregon statutes prohibiting discrimination on the basis of disability are to be construed consistently with similar provisions of the ADA. O.R.S. § 659.449. This discussion is therefore equally applicable to plaintiff's claims arising under federal and state law.

A. Disability

A disability under the ADA is defined as including 1) a physical or mental impairment that substantially limits one or more of an individual's major life activities; 2) having a record of such an impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

       1. Substantial limitation of a major life activity

An impairment substantially limits a major life activity if it renders an individual incapable of performing a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity, compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(I). Factors relevant in determining whether an individual is substantially limited in a major life activity include the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j)(2). The question of whether a condition qualifies as a disability under the ADA must be evaluated on a case by case basis. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002). In addition, the determination of whether an individual is disabled requires consideration of measures that mitigate the individual's impairment. Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999). "A person whose physical or mental impairment is corrected by medication

or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id. at 482-83.

Defendant agrees that plaintiff's lupus constitutes an actual physical impairment, but argues this impairment does not "substantially limit" any "major life activity."

Plaintiff contends that symptoms of her lupus affect almost every life activity and that she is substantially limited in particular as to sleeping, walking and standing, performing manual tasks and working. Based upon my review of the record, including plaintiff's testimony, the deposition testimony of plaintiff's physician, Dr. Bardana, and Bardana's chart notes, I conclude that plaintiff cannot establish that her lupus "substantially limited" any of these major life activities at the time relevant to this action.

Plaintiff's extensive deposition testimony as to the effects of lupus on her daily life indicates that her condition can, at any given time, impact one or a number of activities in which she is engaging. However, it does not establish that, during the relevant time, plaintiff was substantially limited in any major life activity or that she was unable to successfully mitigate the effects of her lupus.

a. Sleeping

Though plaintiff testified she experienced "sleep interruption" during the time she worked for defendant, she offers no specific information as to the extent or duration of this problem. In deposition testimony, Bardana stated that he advised plaintiff to maintain a structured, consistent sleeping regimen. Plaintiff offered no evidence that her ability to sleep was substantially impacted or that she was unable to mitigate her sleeping difficulties by following her physician's advice.

### b.  Walking and standing

Plaintiff asserts that her lupus causes fatigue and, occasionally, water retention which, in turn, substantially limits her ability to walk or stand.  The deposition testimony of both plaintiff and her physician, however, does not support this assertion.  While plaintiff's physician did testify that plaintiff's ability to do any one activity for a sustained period of time may be limited, he did not indicate that there was any particular activity that plaintiff was unable to do or significantly restricted in doing.  Plaintiff's admission that while she worked for defendant she could and would on occasion jog "maybe a mile" (Kinney Depo. 135:17-25) undermines her assertion that she was substantially limited in these activities.  While both plaintiff and her physician indicated that plaintiff may tire easily when engaging in particular activities, including walking or standing, the record includes no evidence that plaintiff was *substantially* limited as to her ability to walk or stand as compared to the average person in the general population.

### c.  Manual Tasks

Plaintiff argues she is limited in doing repetitive tasks and in lifting. The Supreme Court has held that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  <u>Toyota Motor Mfg.</u>, 534 U.S. at 198. If each of the tasks included in the major life activity of performing manual tasks does not independently qualify as a major life activity, then together they must do so.  <u>Id.</u>

While repetitive tasks and lifting could arguably each be of central importance to daily life, plaintiff has offered no evidence that she is severely restricted from doing these

activities or that she is unable to mitigate the impact of any restriction.  Plaintiff states in her

deposition testimony that repetitive tasks can cause her joints to become inflamed but that she

is able to mitigate the effects by breaking up the activity.  In light of this, a trier of fact could

not conclude that plaintiff's ability to perform repetitive tasks was substantially limited.

As to the task of lifting, plaintiff's physician's testimony that he would counsel her

against taking a job that involved heavy lifting, on its own, does not offer sufficient evidence

to support the conclusion that plaintiff was "substantially limited" in performing the amount

of lifting ordinarily performed in daily living.

### d. Working

In order for plaintiff to show that she is substantially limited in the activity of

working, she must show that she is prevented from working in a broad class of jobs.  Sutton,

527 U.S. at 491.  The inability to perform a single, particular job does not constitute a

substantial limitation in the major life activity of working. Id. (citing § 1630.2(j)(3)(I)).

Plaintiff has not produced evidence that would support the conclusion that she is

substantially limited in the activity of working or that her demonstrated inability to work the

overnight shift prevents her from working in a broad class of jobs.  In addition, plaintiff's

evidence does not establish that she is prevented from performing jobs that involve heavy

lifting, repetitive tasks, or extended periods of being outside, walking or standing.  Plaintiff

has not attempted to perform any jobs requiring these activities and only offers her opinion

that they would not be a "good fit" for her.  Even if the evidence regarding any limitations

plaintiff might have in performing these specific tasks supported the conclusion that she was

substantially limited, the class of jobs in which plaintiff would be prevented from working would not be "broad."

Plaintiff has not produced evidence that would support the conclusion that she was substantially limited in any major life activity during the relevant period. Therefore she cannot satisfy the first test for establishing a *prima facie* showing of disability under the ADA.

### 2. Record of an impairment

To have a record of an impairment that substantially limits a major life activity means to have "a history of, or [have] been mis-classified as having, a mental or physical impairment that substantially limits one or more major life activities." See 42 U.S.C. §12102(2)(B); 29 C.F.R. § 1630.2(k). Emphasizing that one intent of the ADA is to prevent discrimination *based on a history* of a disability, the EEOC's *Interpretive Guidance on Title I of the Americans with Disabilities Act*, 29 C.F.R. App. §1630.2(k), instructs that this definition refers to records "relied on by an employer" which indicate that the individual has or has had an impairment. Based on this interpretive guidance, the Seventh Circuit has observed that only a "record" of a disability of which the employer was aware satisfies the "record" prong of this definition. Davidson v. Midelfort Clinic, Ltd., 133 F. 3d 499, 510 n.8 (7th Cir. 1998).

Defendant does not appear to dispute that plaintiff has a record of a disability, based, in part, on her earlier receipt of social security benefits. Instead, defendant argues that it could not have intentionally discriminated against plaintiff because it was unaware of plaintiff's record before it restructured plaintiff's job. Although the parties have not cited,

nor have I found, a Ninth Circuit opinion directly addressing this issue, I find it only logical that, as the Davidson court concluded, an employer must be aware of the record in question in order to establish disability based upon a record of disability. The definition of a "disabled individual" includes those with a record of a disability in order to combat the effect of discrimination based on fear and stereotypes. See School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 279 (1987) (quoting Southeastern Community College v. Davis, 442 U.S. 397, 405-06 n. 6 (1979)). If an employer is unaware of a record of disability, it cannot discriminate based on the fear and stereotypes that may stem from such a record.

Here, there is no evidence that defendant was aware of any record of a disability before it made the decision to restructure work assignments which resulted in the elimination of plaintiff's position. Accordingly, plaintiff cannot establish that she is disabled within the meaning of the ADA based upon a record of disability.

3. Regarded as having an impairment

Individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. See 42 U.S.C. § 12102(2)(c). This statutory definition is satisfied when (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999).

Plaintiff has provided no evidence that defendant "regarded" her as having an impairment. Plaintiff admits that defendant did not know of her lupus until the April 2, 2003 meeting. Defendant was not mistaken in its belief that plaintiff could not perform the

overnight shift. Plaintiff has provided no evidence to support her contention that, after defendant became aware of her lupus, it regarded her as substantially limited in the major life activity of working. Plaintiff, therefore cannot establish that she is disabled under this section of the statute.

Plaintiff has not shown the existence of evidence from which a trier of fact could conclude that she was substantially impaired in any major life activity, that she had a record of a disability of which defendant was aware, or that she was regarded as being disabled. Therefore, defendant is entitled to summary judgment on plaintiff's disability claims.

B. "Qualified" Individual

A plaintiff has the burden of showing that she is a "qualified person with a disability." Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1111 (9th Cir. 2000) (en banc), vacated on other grounds sub nom, US Airways, Inc. v. Barnett, 535 U.S. 391. In order to show that she is "qualified," the plaintiff must demonstrate that she can perform the essential functions of a position she holds or desires, with or without reasonable accommodation. Id.; 42 U.S.C. § 12111(8).

Even if material issues of fact existed as to whether plaintiff was disabled, I would grant summary judgment for the defendant because plaintiff has not produced evidence that could establish the second prong of the ADA test–that she was "qualified" for the relevant position. Plaintiff acknowledges that she was not able to work the overnight shift and that defendant could offer her no reasonable accommodation that would allow her to do so. Though plaintiff may have been qualified to perform the duties of the daytime associate producer position, the record supports only the conclusion that the decision to eliminate that

position was made before defendant learned of plaintiff's lupus. Therefore, for purposes of disability discrimination analysis, the daytime position was not a position that plaintiff "held." The fact that she may have wished to continue in that position is irrelevant because it no longer existed and, as discussed below, defendant was not obligated to re-create it for her.

Plaintiff contends that her daytime associate producer position was given to someone else and therefore still existed. However, defendant has provided evidence establishing that, although the duties for which plaintiff had been responsible continued to exist, they were distributed between an existing producer position and a new writer/reporter position, for which plaintiff, self-admittedly, was not qualified.

Plaintiff has also produced no evidence creating an issue of fact regarding the existence of another position with defendant for which she would have been qualified. Instead, she offers only her unsubstantiated assertion that, if defendant had only looked, it would have found a position for her. Defendant has rebutted that assertion by submitting deposition testimony showing that members of its staff did indeed look for an alternative, existing position for plaintiff without success. That testimony indicates that defendant's staff also went beyond its legal obligation and tried to find a way to reorganize its existing structure in order to accommodate plaintiff.

Plaintiff acknowledges that she was unqualified for the overnight associate producer position and has produced no evidence that another position existed for which she would have been qualified. Under these circumstances, plaintiff cannot establish that she is a "qualified" person with a disability within the meaning of the ADA.

C.  Discrimination because of disability

The final requirement for proving a disability discrimination claim is establishing that a plaintiff was discriminated against because of her disability.  Kennedy, 90 F.3d at 1481.

As noted above, plaintiff has not produced evidence from which a trier of fact could conclude that the first two requirements for establishing an ADA disability claim have been met.  Even if plaintiff could satisfy those requirements, I would grant defendant's motion for summary judgment because plaintiff cannot show the crucial causal link between her claimed disability and the adverse employment decision.

Defendant has submitted testimony showing that the decision to eliminate plaintiff's position was made and approved before plaintiff disclosed she has lupus.  Plaintiff's own deposition testimony supports defendant's assertion that changes were made prior to plaintiff's disclosure.  Plaintiff testified that before she told defendant that she has lupus, Thomas told her the management had been "jockeying" some positions, that the future of the show plaintiff produced was uncertain and that "the good news" was that the station was able to offer her another position.  Thomas'  testimony regarding this conversation is consistent with plaintiff's testimony.  Additional testimony by Thomas and Lippoff supports defendant's assertion that the adverse employment decision–the elimination of plaintiff's position–was made before plaintiff's disclosure, and therefore, without knowledge, of her claimed disability.  The record supports only the conclusion that plaintiff was subsequently terminated because she was unable to accept the only available position for which she was eligible.

There is no evidence that the decision to eliminate plaintiff's position was not made before plaintiff disclosed that she has lupus.  As noted above, defendant's financial

documents do not show that defendant decided to terminate plaintiff because of her disclosure. Though the documents alone cannot prove defendant's assertion that the reorganization decision was made before plaintiff disclosed that she has lupus, defendant offers a reasonable explanation for the discrepancies in its budget and staff reports. In the absence of any evidence to the contrary, there exists no genuine issue of fact as to the timing of the decision to eliminate plaintiff's position.

Based upon the evidence before the court, a reasonable trier of fact could only conclude that defendant decided to eliminate plaintiff's position before it knew plaintiff has lupus. The evidence would likewise support only the conclusion that defendant terminated plaintiff because it had no available, existing positions for which plaintiff was qualified. Plaintiff, therefore, cannot establish a *prima facie* case of disability discrimination.

D. Burden-shifting requirements

If the employee makes out a *prima facie* case of unlawful discrimination on the basis of disability, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment decision. If the employer meets this burden of production, the plaintiff must establish that the employer's proffered reason is mere pretext and that the decision, in fact, constituted unlawful discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Here, plaintiff has failed to produce evidence supporting a *prima facie* claim of disability discrimination. However, even if plaintiff had produced such evidence, she has not shown evidence from which a trier of fact could conclude that the defendant's proffered

reason for the changes resulting in her termination was a pretext for unlawful discrimination. Defendant's evidence showing that plaintiff's termination was a result of the company's budget reduction plans shows a legitimate, non-discriminatory reason for its decision. Defendant has submitted testimony showing the restructuring plan that included the elimination of plaintiff's position resulted in an approximate $375,000 reduction in its 2004 fiscal-year budget projected costs, including a net salary savings of over $39,000. Plaintiff has not offered any evidence to support her argument that cost-cutting measures were a mere pretext for her termination. Under the circumstances, plaintiff's disability discrimination claim would fail even if plaintiff could establish a *prima facie* case of unlawful discrimination. I therefore grant defendant's motion for summary judgment on plaintiff's disability discrimination claim.

II.  Reasonable Accommodation

    A.  Standards

Where, as here, a plaintiff alleges that the employer has failed to accommodate her disability, the plaintiff bears the burden of establishing the existence of a specific reasonable accommodation that the employer has failed to provide. Memmer v. Marin County Courts, 169 F.3d 630, 633 (9th Cir. 1999). Accommodation "may include ...  job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  An employer is not required to eliminate or reassign essential job functions, fundamentally alter the nature of a job or create a new position in order to reasonably accommodate a disabled employee. See, e.g. Cochrum v. Old

Ben Coal Co., 102 F.3d 908, 913 (7th Cir.1996); White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir.1995).

Once an employee requests an accommodation, the employer must engage in an interactive process with the employee to seek an appropriate reasonable accommodation. Barnett, 228 F.3d at 1112. The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective, if such accommodation may be found. Id. at 1114-15.

B. Analysis

Plaintiff has failed to provide evidence from which a trier of fact could find that defendant could have provided any specific reasonable accommodation for her lupus. As discussed above, the record supports only the conclusion that defendant decided to eliminate plaintiff's daytime associate producer position before plaintiff disclosed her lupus. Accordingly, any accommodation that defendant may have been required to provide was in conjunction with the overnight associate producer position that plaintiff was offered after the restructuring and at the time she disclosed that she has lupus.

Plaintiff acknowledges that defendant could not have provided any accommodation that would have allowed her to work the overnight shift. Under the ADA, defendant was not required to create a new position or to move another employee out of a position in order to accommodate plaintiff. There is no question of fact as to whether a specific accommodation that defendant failed to provide was reasonable because plaintiff has offered no evidence that *any* possible accommodation existed.

At the April 8th meeting with Stedman and Thomas, plaintiff was asked if she could offer any ideas that would allow her to continue working. Plaintiff offered none then and did not suggest any possible accommodations during the three weeks she continued working for defendant. Plaintiff has offered no evidence to dispute the evidence in the record showing that defendant made numerous efforts to find a "solution" that would allow plaintiff to continue in its employ after it learned of plaintiff's lupus. In light of these efforts and defendant's solicitation of plaintiff's suggestions about accommodation, plaintiff cannot establish that defendant failed to meet its obligation to engage in an interactive process with plaintiff to identify reasonable accommodations.

Plaintiff has failed to show evidence that could establish the existence of a specific reasonable accommodation defendant failed to provide, and has offered no evidence to contradict defendant's assertion that it engaged in good faith in an interactive process to determine the existence of a reasonable accommodation. Accordingly, defendant's motion for summary judgment on the accommodation claim is granted.

III. Retaliation

A. Standards

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that she engaged in activity protected by the ADA, that her employer subjected her to an adverse employment decision, and that there was a causal link between the activity and the employer's action. Barnett, 228 F.3d at 1121. "Adverse employment action" refers to "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a protected activity." Ray v. Henderson, 217 F.3d

1234, 1244 (9th Cir. 2000) (citing EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). "Retaliation" refers to actions "materially affecting compensation, terms, conditions, or privileges" of employment. 42 U.S.C. § 2000e-2(a)(1); <u>Koran v. California Youth Authority\</u>, 217 F.3d 1104, 1109 (9th Cir. 2000). Termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review, and refusing to consider an employee for a promotion are adverse employment actions. <u>Little v. Windermere Relocation, Inc.</u>, 265 F.3d 905, 914 (9th Cir. 2001).

B. <u>Analysis</u>

There is no question that plaintiff experienced an "adverse employment action," and seeking reasonable accommodation for disability is clearly a "protected activity." However, plaintiff's claim that defendant eliminated her position in retaliation for her request for accommodation fails.

There is nothing in plaintiff's deposition testimony indicating that plaintiff actually requested any accommodation for her lupus. Plaintiff's testimony regarding her April 2nd meeting with Thomas includes no reference to a request for accommodation. Plaintiff's subsequent affidavit indicating that she made such a request at that time is not fully consistent with her prior sworn testimony. Plaintiff testified that she offered no suggestions regarding accommodation during the April 8th meeting with Thomas and Stedman or at any time during the next three weeks.

Even if the record could support the conclusion that plaintiff engaged in a "protected activity" by requesting reasonable accommodation, plaintiff's retaliation claim fails on other grounds. As discussed at length above, plaintiff has failed to show that defendant terminated

her position after she disclosed her lupus. Because the record supports only the conclusion that defendant decided to eliminate plaintiff's position before she disclosed her lupus and before plaintiff could have requested accommodation, plaintiff cannot establish a causal link between any purported request for accommodation and the adverse employment decision. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claims.

IV. Unlawful Qualification Standards

   A. Standards

Under the ADA and O.R.S. Chapter 659, an employer may use qualification standards that have the effect of screening out disabled individuals only if those standards are "job-related and consistent with business necessity, and ... performance cannot be accomplished by reasonable accommodation ...." 42 U.S.C. § 12113(a); 42 U.S.C. § 12112(b)(6).

   B. Analysis

Plaintiff alleges that defendant's requirement that an individual working the day shift be able to work the night shift illegally screened her from her job as a daytime associate producer. However, plaintiff was not screened from the daytime associate producer position–that position was eliminated in the course of a staffing reorganization. The only qualification standards relevant here are those related to the overnight associate producer position plaintiff was offered as part of defendant's restructuring. Defendant's standards required that the overnight associate producer be able to work overnight shifts. Defendant asserts that this requirement was necessary to ensure that news produced for the morning broadcasts was not "stale" by the time it was aired and plaintiff acknowledges that working

overnight is essential to performing that job.  Under these circumstances, plaintiff cannot establish that the requirement that the overnight associate producer be able to work at night was unlawful.  Defendant is therefore entitled to summary judgment on this claim.

V.  Common Law Wrongful Discharge

A.  Standards

Generally, employers in Oregon may discharge an employee at any time, for any reason, unless the termination violates a contractual, statutory, or constitutional requirement. Patton v. J.C. Penney Co., 301 Or. 117, 719 P.2d 854 (1986), abrogated on other grounds by McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841 (1995).  Oregon courts have recognized two exceptions to the at-will doctrine.  Id.  The first exception applies where an employee is discharged for fulfilling an important societal obligation.  Estes v. Lewis and Clark College, 152 Or.App. 372, 380, 954 P.2d 792 (1998). The second exception applies where the employee is discharged for exercising an employment related right of public importance.  Id. To prevail on a claim of wrongful discharge, the plaintiff must show a causal connection between the exercise of the employment-related right and the adverse employment action. Id.

In addition to these limitations, a wrongful termination claim is further conditioned on the absence of adequate statutory remedies. Delaney v. Taco Time Int'l, Inc., 297 Or. 10, 16, 681 P.2d 114, 118 (1984).  When the legislature adopts virtually all of the remedies available under the common law, Oregon courts conclude that the legislature intends the statutory remedy to be exclusive, and will find a wrongful discharge claim to be preempted. Farrimond v. Louisiana Pacific Corp., 103 Or.App. 563, 566, 798 P.2d 697, 698 (1990).

Courts of this District have held that Oregon's disability statutes preempt a claim for wrongful discharge because the remedies provided by the legislature are adequate. See Galenbeck v. Newman & Newman, Inc., 2004 WL 1088289, *8 (D. Or. May 14, 2004); Bailey v. Reynolds Metals Co., 2000 WL 33201900 (D. Or. Sept. 11, 2000).

B. Analysis

In this claim, plaintiff alleges she was discharged by defendant for exercising her right to seek a reasonable accommodation for a disability in violation of O.R.S. 659A.112.

Defendant argues plaintiff never sought accommodation for her disability and that even if she did seek such accommodation, KOIN's decision to terminate plaintiff's position was made before plaintiff disclosed her condition.

As discussed above, plaintiff cannot establish a *prima facie* case of discrimination in violation of the ADA or parallel Oregon statutes. Plaintiff is unable to support her assertions that defendant eliminated her position after she disclosed her lupus, that she sought reasonable accommodation or that she was discharged for seeking such accommodation. Under these circumstances, plaintiff cannot establish that she was wrongfully terminated because she sought accommodation for a disability.

Even if the record could support a finding that plaintiff sought reasonable accommodation and was discharged as a result, I would grant defendant's motion for summary judgment because I agree with the decisions cited above holding that statutory remedies preclude wrongful termination claims based upon disability. Oregon Revised Statute § 659A .885 provides that in an action for violation of Section 659A.109, a plaintiff

may have a jury trial upon request, and may obtain compensatory and punitive damages, and attorney fees. Or.Rev.Stat. § 659A.885.  These remedies are adequate.

## CONCLUSION

Defendant's motion for summary judgment (#21 ) is GRANTED as to all of plaintiff's claims.

DATED this 16th day of  May, 2005.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge